UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JARET B.,[1]

                                  Plaintiff

-vs-

COMMISSIONER OF SOCIAL
SECURITY,

                                  Defendant.
_____

DECISION and ORDER

1:22-CV-0896-CJS

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant") which denied the application of Plaintiff for Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI") benefits.   Plaintiff maintains that such determination is affected by errors of law and not supported by substantial evidence. Now before the Court is Plaintiff's motion (ECF No. 13) for judgment on the pleadings and Defendant's cross-motion (ECF No.16) for the same relief. For reasons discussed below, Plaintiff's application is granted, Defendant's application is denied, and the matter is remanded to the Commissioner for further administrative proceedings.

## STANDARDS OF LAW

The Commissioner decides applications for disability benefits using a five-step

---

[1]  The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

sequential evaluation process:

> A five-step sequential analysis is used to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920.   First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment[2] which significantly limits his physical or mental ability to do basic work activities.[3] If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment].   Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work.[4] Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.   The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.[5]

---

[2] "At step two, the ALJ must determine whether the claimant has a 'severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 404.1509, or a combination of impairments that is severe and meets the duration requirement.' *Id*. If not, the claimant is deemed not disabled, and the inquiry ends." *Koch v. Colvin*, 570 F. App'x 99, 101 (2d Cir. 2014); *see also*, 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.").

[3] The Commissioner's Regulations define basic work-related activities as follows: "Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include— (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting."   20 C.F.R. § 404.1522 (West 2023).

[4] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

[5] "The Commissioner's burden at step five is to show the existence of possible employment for an individual with the RFC determined by the ALJ in the fourth step of the sequential analysis." *Smith v. Berryhill*, 740 F. App'x 721, 726–27 (2d Cir. 2018) (citation omitted). The ALJ typically does this either by resorting to the medical vocational "grids" or, where the claimant has a non-exertional impairment, by taking testimony from a vocational expert [("VE")]. *See, Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986) ("[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines. A more appropriate approach is that when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted).

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim.   In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).   Further, Section 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

The issue to be determined by the court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error

---

employment indicated by the medical vocational guidelines, then the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.").

of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the [administrative law judge] [("]ALJ[)"]. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773.   Substantial evidence is defined as "more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered." *Id*.

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted); *see also, Snyder v. Comm'r of Soc. Sec*., No. 22-277-CV, 2023 WL 1943108, at *1 (2d Cir. Feb. 13, 2023) ("While the substantial evidence standard requires we find more than a mere scintilla of support for the Commissioner's decision, it is still a very deferential standard of review requiring us to uphold the Commissioner's findings unless a reasonable factfinder would *have to conclude otherwise*.") (emphasis in original; citations and internal quotation marks omitted); *Schillo*

*v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022) ("We may vacate the agency's disability determination only if it is based on legal error or unsupported by 'substantial evidence'— that is, if no reasonable factfinder could have reached the same conclusion as the ALJ.").

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).   "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).   "In other words, this Court must afford the Commissioner's determination considerable deference, and 'may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.'" *Melia v. Colvin*, No. 1:14-CV-00226 MAD, 2015 WL 4041742, at *2 (N.D.N.Y. July 1, 2015) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984)).

Also, when considering whether a particular finding or decision is supported by substantial evidence, a court may not rely on any *post hoc* rationalizations offered by the Commissioner, but it may consider evidence that was evidently considered by the ALJ

even if it was not expressly mentioned in the administrative decision. *See, Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability. *E.g., Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.1982). In *Berry*, we noted that, although we would remand for further findings or a clearer explanation where we could not fathom the ALJ's rationale "in relation to evidence in the record," we would not remand where "we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Id. See also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir.1981) ("Notwithstanding the apparent inconsistency between the reports of [two doctors], we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony ....")."); *see also, Loni S. v. Comm'r of Soc. Sec.*, No. 3:22-CV-805 (CFH), 2023 WL 4195887, at *19 (N.D.N.Y. June 27, 2023) ("The Court is required to look at the entire ALJ's decision when reviewing for substantial evidence. *See John L. M. v. Kijakazi*, No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *2 (N.D.N.Y. Aug. 18, 2022) (citations omitted) ('[W]hile a reviewing court may not affirm the Commissioner's decision based on an impermissible *post-hoc* rationalization, it may affirm where the ALJ's consideration of the relevant factors can be gleaned from the ALJ's decision as a whole.').").

## FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the factual and procedural history of

this action, which is set forth in the parties' papers.    The Court will refer to the record only as necessary to rule on the alleged errors identified by Plaintiff.

On April 6, 2020, Plaintiff applied for SSDI and SSI benefits claiming to be disabled due to a combination of mental and physical impairments.    In 2016, Plaintiff had surgery for a non-malignant right-side brain tumor affecting his inner ear, from which he has certain residual limitations including hearing loss and some loss of balance.    Plaintiff has also obtained treatment for insomnia, anxiety, depression, bipolar disorder, and alcohol abuse.    Although, Plaintiff indicated that he was no longer drinking alcohol following his completion of a six-month treatment program for substance abuse in 2019.    When asked at the administrative hearing to explain what was preventing him from working, Plaintiff stated: "I'd basically, say that the hearing loss and the [brain] surgery and everything that went wrong with that. It was also one of the physical balance issues I have had after that surgery and then, of course, the mental health issues."[6]

Plaintiff was 40 years of age on the date of the administrative hearing, and holds a Bachelor's Degree in Hospitality Management, as well as a Master's Degree in Public Administration which he completed after the alleged disability onset date.    Plaintiff has worked at various jobs including land surveyor, restaurant server, catering service employee, sports arena concession stand worker, and administrative intern.[7]    Plaintiff last worked in February 2016, just before his brain surgery.

After Plaintiff's claim was denied initially and on reconsideration, on October 28,

---

[6] Hearing Transcript at pp. 10-11.
[7] The ALJ found that only the restaurant server and land surveyor jobs qualified as substantial gainful employment.

2021, he had a hearing before an ALJ, at which he and a VE testified.  The VE's testimony is significant to Plaintiff's claim here in two respects.  First, when asked if a hypothetical claimant with Plaintiff's other non-exertional restrictions, including being limited to only "occasional" interaction with other people, could perform "other work" if he were restricted to an environment with only "low noise," meaning less than "moderate" as defined in the Dictionary of Occupational Titles, the VE indicated that there was only one job, that of "package sorter." Tr. 65-66. The VE stated, however, that without such a limitation for exposure to noise, the same hypothetical claimant could perform three additional jobs, namely, "hand packager," "stores laborer," and "kitchen helper." Tr. 65. Second, the VE testified that any claimant who would routinely miss two days of work per month would not be able to maintain competitive work.

On January 26, 2022, the ALJ issued a Decision (Tr. 15-32) finding that Plaintiff was not disabled at any time between the alleged disability onset date and the date of his decision.   The ALJ conducted the five-step sequential evaluation and found, in pertinent part, that Plaintiff had severe impairments consisting of loss of hearing in the right ear, generalized anxiety disorder, and bipolar disorder, and non-severe impairments consisting of gastro-esophageal reflux disorder ("GERD") and obesity; that those impairments, either singly or combined, did not meet or medically equal a listed impairment; that Plaintiff had

> the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: he is able to hear and understand simple instructions. He is limited to simple, routine, and repetitive tasks. He is limited to simple work-related decisions. He can have occasional interaction with supervisors, coworkers, and the general

public. He can tolerate occasional changes to the worksite and routine. He can have only occasional exposure to unprotected heights and moving mechanical parts. He can perform occasional operation of a motor vehicle[;]

that Plaintiff was unable to perform any past work; that with the aforementioned RFC, Plaintiff could perform other work, namely, the jobs of hand packager, stores laborer, and kitchen helper;[8] and that Plaintiff was therefore not disabled.

Plaintiff, though, maintains in this action that the ALJ's decision is erroneous in two similar respects. Namely, in two separate instances, the ALJ stated that he found particular medical opinions "persuasive," but then failed to include limitations from those opinions into his RFC finding. More specifically, Plaintiff argues as follows:

> The ALJ found the opinion of Plaintiff's treating counselor, Jordan Valley, LMHC "persuasive" because it was "supported by the mental health counselor's own treatment of the claimant," and predominantly consistent with the remaining objective evidence contained in the record from other sources." Tr. 27. However, the ALJ failed to even mention Mr. Valley's opinion regarding Plaintiff's absences. Id. Mr. Valley indicated that he anticipated Plaintiff's impairments or treatment would cause him to be absent from work two days per month. Tr. 710.
>
> \*\*\*
>
> Here, the ALJ found Mr. Valley's opinion "persuasive," but failed to adopt (or explain why he omitted) the limitation that Plaintiffs would be absent two days per month. This was prejudicial to Plaintiff because the VE testified that the tolerance for absences on an annual basis was eight. Tr. 69-70. Therefore, two absences per month would be work preclusive. Id. The ALJ's error requires remand.
>
> \*\*\*
>
> The ALJ [also] found the opinions of the State agency medical consultants, J. Meyer, M.D., and G. Wang, M.D. "persuasive" because they were "consistent with, and supported by, the clinical evidence. Tr. 29. Specifically,

---

[8]  *See*, Defendant's Memo of Law at p. 7 ("the ALJ relied on the testimony of a vocational expert to conclude that Plaintiff could perform work as a Hand Packager, DOT code 920.587-018, Laborer, Stores, DOT code 922.687-058, and Kitchen Helper, DOT code 318.687-010. T31-32.").

the ALJ found that "the record supports that the claimant was able to hear and understand only simple instructions, and had environmental restrictions, due to this hearing loss." *Id* . However, while the ALJ did include the ability to "hear and understand simple instructions" in his RFC assessment, he failed to include any environmental limitations regarding Plaintiff's hearing loss. In particular, the ALJ failed to include the limitation opined by Jennifer Meyer, MD and G. Wang, MD that Plaintiff would be "limited to occasional communication due to hearing loss," and "should avoid even moderate noisy environmental exposure due to hearing loss." Tr. 80, 94, 113-114, 134-135 (emphasis added).

The Department of Labor's Selected Characteristics of Occupations ("SCO") categorizes noise intensity for jobs into five levels: Level 1 - very quiet; Level 2 - quiet; Level 3 - moderate; Level 4 - loud; Level 5 - very loud." See U.S. Dep't of Labor, Selected Characteristic of Occupations Defined in the Revised Dictionary of Occupational Titles, Appendix D-2. Noise Intensity Level (1993). The SCO gives examples of work environments with "moderate" noise, which include: "business office where type-writers are used; department store; grocery store; light traffic; [and] fast food restaurant at off-hours." Id. In contrast, the examples for "quiet noise levels are: "library; many private offices; funeral reception; golf course; [and] art museum." *Id*. Therefore, Dr. Meyer's and Dr. Wang's opinion that Plaintiff "should avoid even moderate noisy environmental exposure due to hearing loss" means that Plaintiff cannot perform moderate noise intensity jobs and should only perform jobs at quiet or very quiet. However, because the ALJ failed to include this limitation, the jobs cited by the VE, which the ALJ used at step five were moderate or loud. Tr. 66.

The ALJ actually included an additional limitation regarding noise level in his second hypothetical to the VE. Tr. 65. The limitation was that the claimant "would be limited to exposure to low level noise only, equivalent to an office environment." *Id*. The VE interpreted this to be a noise intensity level of "quiet," to which the ALJ agreed. Tr. 66. When this limitation was added to hypothetical number one, the VE testified that there would only be one job that would fit the hypothetical. *Id*. The ALJ even offered two jobs of his own (surveillance system monitor and document preparer), to which the VE testified that the jobs were obsolete and no longer existed. Tr. 67.

***

The ALJ's RFC assessment is insufficient with regard to Plaintiff's hearing loss and requires remand.

Plaintiff's Memo of Law at pp. 23-26 (emphasis added).

Defendant disagrees and insists that the ALJ's decision is free from error and supported by substantial evidence.

The Court has considered the parties' submissions, including Plaintiff's reply, and the entire administrative record.

DISCUSSION

As discussed earlier, Plaintiff here contends that the ALJ committed legal error by failing to include, in his RFC finding, all limitations contained in medical opinions that he purported to find "persuasive":

The ALJ erred in his consideration of the opinion evidence resulting in an insufficient residual functional capacity (RFC) assessment. The ALJ failed to include a limitation for absences despite finding an opinion "persuasive" which reports that Plaintiff would likely be absent two days per month. Similarly, the ALJ failed to include an environmental restriction related to Plaintiff's hearing loss despite finding an opinion "persuasive" which contained a specific restriction to avoid even moderate noise exposure. These errors are material because the VE testified that there would only be one job in the national economy if the restriction to a "quiet" noise level was added, and that the maximum number of absences for the types of jobs cited would be eight per year. Had the ALJ properly considered the medical opinions, the RFC assessment would have included the above restrictions[.]

Pl. Memo of Law at pp. 21-22.

However, to the extent Plaintiff contends that remand is required simply because the ALJ did not adopt the aforementioned limitations in the opinions from Valley, Meyer and Wang, his argument lacks merit, since an ALJ's RFC finding need not mirror any

11

single medical opinion. *See, Davis v. Kijakazi*, No. 21CV8485VECBCM, 2023 WL 5726054, at *12 (S.D.N.Y. Aug. 18, 2023) ("Regardless of how many medical source statements the ALJ receives – or the weight he assigns to them – the determination of the claimant's RFC is reserved to the ALJ, who is not required to accept, or follow, any one medical opinion. *See Camille v. Colvin*, 652 F. App'x 25, 29 n.5 (2d Cir. 2016) (summary order) ("An ALJ may accept parts of a doctor's opinion and reject others."), report and recommendation adopted sub nom. *Davis v. Comm'r of Soc. Sec.*, No. 21-CV-8485 (VEC), 2023 WL 5723011 (S.D.N.Y. Sept. 5, 2023).   The issue for the Court, rather, is whether the ALJ's RFC finding is supported by substantial evidence. *See, id.* ("[I]t is the ALJ's prerogative to make an RFC assessment after weighing the evidence and the District Court may not reverse provided there is substantial evidence in the record to support her findings.").

Moreover, an ALJ is not required to adopt every limitation contained in a medical opinion even where he finds the opinion overall to be persuasive. *See, Kenneth H. v. Comm'r of Soc. Sec.*, No. 1:21-CV-735-DB, 2023 WL 6065026, at *9 (W.D.N.Y. Sept. 18, 2023) ("[T]he ALJ was not required to wholesale adopt Dr. Lee's opinion solely because it was found to be persuasive, as Plaintiff appears to argue. *See Barry v. Colvin*, 606 F. App'x 621, 624 (2d Cir. 2015) (ALJ's RFC finding need not include every limitation assessed by a consultative examiner, and ALJ could, instead, exercise discretion in reviewing the record evidence in its totality); *see also Fancher v. Comm'r of Soc. Sec.*, No. 19-cv-158 (KS), 2020 WL 5814359, at *5 (W.D.N.Y. Sept. 30, 2020) ("An ALJ is not required to adopt wholesale the opinion of any one medical source, but is entitled to weigh

all of the evidence available to make an RFC finding that is consistent with the record as a whole.").

However, where an ALJ makes an RFC finding that conflicts with a medical opinion, the ALJ must explain why the conflicting opinion was not adopted. *See*, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996) ("The RFC assessment must always consider and address medical source opinions. *If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted*.") (emphasis added).

> Generally, an ALJ must reconcile discrepancies between his or her RFC assessment and medical source statements. SSR 96-8p, 1996 WL 374184, at *7; *see Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006). "If the ALJ's RFC finding conflicts with an opinion from a medical source, the ALJ 'must explain why the opinion was not adopted.'" *Williams v. Colvin*, No. 13-roncv-5431 (RLE), 2015 WL 1223789, at *8 (S.D.N.Y. Mar. 17, 2015) (quoting SSR 96-8p); *accord Garcia v. Berryhill*, No. 17-cv-10064 (BCM), 2018 WL 5961423, at *11 (S.D.N.Y. Nov. 14, 2018). While an "ALJ is not required to explicitly reconcile every conflicting shred of evidence in the record, an ALJ cannot simply selectively choose evidence in the record that supports [his] conclusions." *Williams*, 2015 WL 1223789, at *8 (cleaned up); *see also Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (an ALJ may not "arbitrarily substitute his own judgment for competent medical opinion").

*Lynch v. Commissioner*, No. 22CIV5620CSAEK, 2024 WL 728483, at *11 (S.D.N.Y. Feb. 21, 2024).

Although, an ALJ's failure to provide a clear explanation on this point may not require reversal if the Court can glean the rationale for the ALJ's decision not to adopt the conflicting opinion:

Accordingly, when an ALJ adopts only portions of a medical opinion, she must explain why the remaining portions were rejected. *Raymer v. Colvin*, No. 14-CV-6009P, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015). This explanation need not be exhaustive: it is enough if the Court can "glean the rationale of an ALJ's decision." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (stating that courts "do not require that [the ALJ] have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability").

*Chance v. Comm'r of Soc. Sec.*, No. 18-CV-6043-FPG, 2019 WL 2123565, at *6 (W.D.N.Y. May 15, 2019).

Here, the ALJ's RFC finding conflicts with the medical opinion evidence in two respects, namely, it omits LMHC Valley's opinion that Plaintiff would be absent from work "two days per month" due to mental health symptoms (Tr. 710), and it omits the opinions of Drs. Meyer and Wang that Plaintiff "should avoid even moderate noisy environmental exposure due to hearing loss."   As Plaintiff maintains, these omissions are significant, since if the ALJ had adopted Valley's opinion concerning absences, Plaintiff would have necessarily been found disabled, and if the ALJ had adopted the opinions by Meyer and Wang concerning noise levels, Plaintiff would not be able to perform the three jobs cited by the ALJ in his decision at Step Five when finding that Plaintiff could perform "other work."   In neither instance did the ALJ expressly explain why he rejected those aspects of the medical opinions by Valley, Meyer, and Wang, which he otherwise generally found to be persuasive.

Nevertheless, with regard to the rejection of Valley's opinion concerning absences from work, the Court finds that the ALJ's reasoning can be reliably gleaned from his

decision as a whole, for the reasons argued in Defendant's brief, pages 9-12 (ECF No. 16- at pages 10-13).   For instance, the ALJ found that the opinion of consultative examiner Janine Ippolito, Psy.D. ("Ippolito"), that Plaintiff had only "mild limitations in sustaining an ordinary routine and regular attendance at work," was persuasive, since it was supported by her own examination and was "predominantly consistent with the remaining objective evidence contained in the record from other sources" for reasons that he enumerated. Tr. 28.   Conversely, the ALJ found that the opinion of another mental health treatment provider, Adrienne Roy, NP ("Roy"), that Plaintiff "would likely not manage well when completing a normal workday and workweek without psychologically based interruptions," was unpersuasive, in part because it was both unsupported by Roy's own treatment notes and "inconsistent with the remaining objective contained in the record from other sources, which showed that the claimant was not nearly as limited as the nurse practitioner opined." Tr. 29.   The ALJ's discussion of Roy's opinion appears to be equally applicable to Valley's opinion.

Therefore, the Court finds it apparent from the ALJ's decision as a whole that, concerning potential absences from work due to mental health symptoms, the ALJ accepted Ippolito's opinion and rejected both Valley's and Roy's opinions, since he found Ippolito's opinion to be better supported and more consistent with the medical evidence overall.   While it would have been better if the ALJ had provided a clearer explanation for why he rejected Valley's opinion concerning absences, consistent with SSR 96-8p, the Court does not find remand is required on this point.

However, the Court cannot reach the same conclusion concerning the ALJ's failure

to incorporate the opinions of Meyer and Wang, that Plaintiff "should avoid even moderate noisy environmental exposure due to hearing loss," into his RFC finding.   That is because the ALJ indicated that he agreed with such opinions, but then omitted such a limitation from his RFC finding.   Specifically, in explaining his RFC finding, the ALJ stated in pertinent part:

> The opinions of the State agency medical consultants, J. Meyer, M.D., and G. Wang, M.D., are persuasive to the extent the opinions were consistent with, and supported by, the clinical evidence.   As discussed at length above, *the record supports that the claimant was able to hear and understand only simple instructions, and had environmental restrictions, due to this hearing loss*.

Tr. 29.   However, since the RFC finding contains no environmental noise restriction, this statement by the ALJ can only be deemed to be consistent with the RFC finding if the Court assumes that the ALJ committed a typographical error, and that he meant to state: "[T]he record supports that the claimant was able to hear and understand only simple instructions, and had **no** environmental restrictions, due to this hearing loss."   The Court, though, declines to make such a speculative assumption.   On the other hand, assuming that the ALJ did not make such a typographical error, then it is unclear why he omitted an environmental noise restriction from the RFC finding.

In sum, there is an obvious discrepancy between the RFC finding and two medical opinions which the ALJ found to be persuasive, and the Court cannot glean the ALJ's rationale from the rest of his decision.   Additionally, the error is not harmless, since the Commissioner's finding at Step Five of the Sequential Evaluation that Plaintiff could perform the three jobs discussed earlier is dependent on there being no environmental

limitation to "quiet" noise levels in the RFC finding. Tr. 65-66.[9]   Clarification is needed from the Commissioner.   Consequently, the action will be remanded to the Commissioner for further administrative proceedings.

CONCLUSION

For the reasons discussed above, Plaintiff's motion (ECF No. 13) for judgment on the pleadings is granted, Defendant's cross-motion (ECF No. 16) for the same relief is denied, the administrative decision is vacated, and the matter is remanded to the Commissioner for further administrative proceedings, pursuant to sentence four of 42 U.S.C. § 405(g).   The Clerk of the Court is directed to enter judgment for Plaintiff and close this action.

So Ordered.

Dated: Rochester, New York
    March 8, 2024

ENTER:

CHARLES J. SIRAGUSA
United States District Judge

---

[9]  The VE testified that the three jobs identified by the ALJ at Step 5 of his decision all involved "moderate or loud" working environments. Tr. 66. Defendant argues that even if the Court finds that the ALJ erred by not including an environmental limitation to quiet noise levels in the RFC finding, it should nevertheless affirm the Commissioner's decision since the VE testified that even with such a restriction there would be two jobs ("Package Sorter" and "Bench Hand") that Plaintiff could still perform in the national economy. However, Defendant is mistaken, since the VE actually testified that the "Bench Hand" position involved moderate noise levels, which leaves only one such job identified by the VE, "Package Sorter." Tr. 66-67. But, more importantly, the ALJ never stated that Plaintiff could perform that job, and the Court declines to make such a determination for the Commissioner. *See, Brown v. Colvin*, 73 F. Supp. 3d 193, 198 (S.D.N.Y. 2014) ("It is not the function of a reviewing court to decide de novo whether a claimant was disabled ... or to answer in the first instance the inquiries posed by the five-step analysis set out in the SSA regulations.") (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999) (citations omitted).